T.C. Memo. 2003-159


UNITED STATES TAX COURT


DALLAS R. HALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10308-01.                    Filed May 29, 2003.


Dallas R. Hall, pro se.

<u>Kelley A. Blaine</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, <u>Judge</u>:  Petitioner moves the Court for an award of administrative costs under section 7430(a)(1).  We decide whether he is entitled to an award of any of those costs.  We hold he is not.  Section references are to the applicable versions of the Internal Revenue Code.

FINDINGS OF FACT

Many facts were stipulated. We incorporate herein by this reference the parties' stipulations of fact and the exhibits submitted therewith. We find the stipulated facts accordingly. Petitioner resided in Ketchum, Idaho, when his petition was filed.

Petitioner is a licensed real estate and mortgage broker who conducts a money-lending operation (operation) through his sole proprietorship (sole-proprietorship) and his wholly owned corporation (corporation). In the operation, third party investors (investors) lend money to the sole-proprietorship, the sole-proprietorship lends money to the corporation, and the corporation lends money to real estate developers and other contractors (collectively, developers).

Petitioner filed a 1994 Form 1040, U.S. Individual Income Tax Return. Petitioner reported on Schedule C, Profit or Loss From Business, of that return that the sole-proprietorship had gross receipts of $16,807, total expenses of $102,989, and a net loss of $86,182. Petitioner claimed as one of the expenses "Other Interest" of $77,872 for interest paid to the investors. Petitioner claimed as the other expenses "bad debts", "car and truck expenses", "depreciation", "legal and professional services", "travel", "meals and entertainment", and "other expenses".

The Commissioner selected petitioner's 1994 tax return for examination and mailed to petitioner a letter scheduling an initial appointment for the examination.  Petitioner did not appear for that appointment.  Subsequently, on April 24, 1996, the Commissioner issued to petitioner a 30-day letter disallowing all amounts claimed for "bad debts", "interest", "travel", "meals and entertainment", and "other expenses",[1] and determining that petitioner was liable for an accuracy-related penalty for negligence and an addition to tax for failure to file timely. The 30-day letter provided generally that the expenses were disallowed because petitioner had not established that:  (1) He had paid them and (2) they were ordinary and necessary business expenses.  The 30-day letter informed petitioner that he could discuss these changes on May 13, 1996, with a representative of the Internal Revenue Service (IRS).

At the scheduled time, petitioner met with a tax auditor named Zora Christian (Christian).  Christian requested substantiation for the disallowed deductions.  Petitioner informed her that he did not have with him any of the requested substantiation for the bad debt or interest expenses.  Christian delivered to petitioner an information document request (IDR) specifically requesting that information.  The IDR set a reply

---

[1] In all, respondent disallowed $97,330 of the deductions which petitioner claimed on Schedule C.

date of May 23, 1996. Petitioner first delivered some of the information to the Commissioner on June 4, 1996.

On July 15, 1996, Christian met with petitioner's representative, Dan Jones (Jones). Jones did not have a power of attorney from petitioner, and Christian declined to discuss with him the specifics of petitioner's case. Christian later issued to petitioner a second IDR requesting a breakdown of his Schedule C gross receipts. Whereas this IDR requested a reply by July 25, 1996, the Commissioner received the requested information on August 12, 1996. On August 13, 1996, Christian revised her examination report to reflect that information and sent the revised report to petitioner with a notice advising him that he could respond to the revised report within 10 days. Petitioner did not respond to the revised report. On September 9, 1996, the Commissioner issued to petitioner a notice of deficiency that reflected the adjustments in the revised report.

Petitioner subsequently requested from the Commissioner further consideration of his 1994 tax return. The Commissioner honored that request by scheduling a meeting for October 22, 1996. At the scheduled time, petitioner met with a tax auditor named Shirley Finn (Finn). Petitioner gave to Finn: (1) A rough explanation of his sole-proprietorship's business, but not containing any reference to the corporation or to the flow of funds from the investors to the developers, and (2) certain other

documents related to the interest expense.  Finn verified from this information that petitioner had in fact paid $47,737 of the claimed interest expense but questioned petitioner's claimed deduction of this interest as business interest.

The case was reassigned to another revenue agent, Pamela Carter (Carter).  Carter also questioned the deductibility of the interest as business interest and questioned whether petitioner had issued information returns (Forms 1099) to the people to whom he had paid the interest.  On November 13, 1996, Carter faxed an IDR to Jones requesting Forms 1099 issued to the payees of the interest and certain other information related to the interest's characterization.  Two days later, Carter spoke with Jones, and he gave to her some of the requested information.  Jones did not mention that the corporation was an intermediary in petitioner's operation.

Carter met with Jones on November 22, 1996.  During the meeting, Carter determined that petitioner had actually paid $61,752.86 of interest.  Carter asked Jones for additional information on the corporation and issued to petitioner an IDR requesting documentation of petitioner's loans to the corporation and an allocation of his interest between business, personal, and investment pursuits.  Carter also requested that petitioner identify where on the return he had reported certain items of income, and she requested that petitioner furnish to her either

copies of Forms 1099 for interest paid to investors, or an explanation why no Forms 1099 were filed or required. On November 25, 1996, Jones responded to part of the IDR by telephone and indicated that he would call Carter back on the next day with other information. Jones never did so. Carter closed the case with no change to the adjustments detailed in the notice of deficiency.

Petitioner did not petition this Court with respect to the notice of deficiency, and, on February 10, 1997, respondent assessed the deficiency shown in that notice. Approximately 2 months later, petitioner asked the Commissioner to reconsider the adjustments underlying that deficiency. On March 4, 1998, Dennis Duggan (Duggan), a revenue agent, notified petitioner that Duggan was assigned to reconsider those adjustments and requested from petitioner the books and records of the sole-proprietorship and the corporation. Petitioner and Duggan met on June 11, 1998. Petitioner did not provide the requested books and records (or any other new information) to Duggan. Duggan concluded his reconsideration with no change and forwarded the case to Appeals for its consideration.

Lydio Sison (Sison), an Appeals officer, considered the case on behalf of Appeals. During a conference with Sison, petitioner discussed the role that his corporation played in his operation. Petitioner did not at the conference produce to Sison

documentation regarding the use of the money that he had borrowed, nor did he produce to Sison a note from the corporation or other documents which Sison desired. Following the appeals conference, petitioner wrote a letter to Sison on September 15, 1998, in an attempt to explain his operation. The letter did not mention the corporation, and it did not discuss the corporation's role in the operation. Sison asked John Keegan (Keegan), whom petitioner had hired to represent him on or about September 15, 1998, to present to Sison the books and records to support petitioner's argument. Keegan declined to do so. Following the Appeals conference, Sison allowed certain reductions in the adjustments listed in the notice of deficiency. Sison did so because Sison believed that they had been allowed in the prior reconsiderations, but not taken into account when the tax was assessed.

Following the partial abatement of tax pursuant to Sison's recommendation, petitioner made a request under the Freedom of Information Act (FOIA) for a copy of his 1992 and 1994 administrative files. On May 15, 1999, Keegan attended an IRS "Problem Solving Day" and presented to representatives of the IRS a narrative as to petitioner's case. Keegan also presented the representatives with copies of approximately 500 pages of documents in the 1992 and 1994 administrative files which he had received pursuant to the FOIA request. Keegan's narrative

partially mentioned the role of the corporation in petitioner's operation but did not state that petitioner lent money to the corporation.

Subsequent to May 15, 1999, the Commissioner's Problem Resolution Program (PRP) referred petitioner's case to the Commissioner's examination division, which assigned the case to a revenue agent named Michelle Ho (Ho). Ho received the case on June 5, 1999, reviewed the file, and requested additional information from Keegan on June 15, 1999. Keegan refused to provide that information, and he declined to meet with Ho at that time. Ho determined shortly thereafter that no change to the prior findings would be appropriate.

Subsequently, pursuant to a request from PRP, Ho reconsidered the case and sent to Keegan an offer to allow petitioner to deduct his verified interest as an expense. Ho's offer conditioned that deduction on petitioner's recognition of an equal amount of Schedule C income. Ho and her manager, Darline Farr, later met with Keegan on October 28, 1999, to discuss Ho's offer. Following a lengthy discussion between the three, Ho and Farr agreed to allow the interest expense of $44,481 without requiring the recognition of a corresponding amount of income.

OPINION

Section 7430(a)(1) allows a taxpayer to recover reasonable administrative costs incurred in certain administrative proceedings before the Internal Revenue Service. The Court may award such a recovery if the taxpayer: (1) Is the prevailing party and (2) did not unreasonably protract the administrative proceeding. Sec. 7430(a) and (b)(3). A taxpayer is not a "prevailing party" if the Commissioner establishes that the Commissioner's position in the administrative proceeding was substantially justified. Sec. 7430(c)(4)(B)(i). For purposes of this case, respondent concedes that petitioner is entitled to an award of reasonable administrative costs if the Commissioner's position in the administrative proceeding was not substantially justified. The Commissioner is considered to have taken a position in that proceeding as of the date of the notice of deficiency. Sec. 7430(c)(7)(B).

The Commissioner's position is substantially justified if it had a reasonable basis in both law and fact, or, in other words, was "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, 487 U.S. 552, 565 (1988); Han v. Commissioner, T.C. Memo. 1993-386. We look to whether the Commissioner's position was reasonable given the legal precedents and available facts and circumstances at the time the Commissioner took his position. Maggie Mgmt. Co. v.

Commissioner, 108 T.C. 430, 443 (1997); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The fact that the Commissioner eventually concedes a case does not necessarily mean that his position was unreasonable, Sokol v. Commissioner, 92 T.C. 760, 767 (1989), but remains a fact to be considered, Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

We conclude on the basis of the facts and circumstances at hand that respondent's position in the administrative proceeding was substantially justified. We believe that the Commissioner acted reasonably in seeking and evaluating information from petitioner and his representatives as to the correctness of the determination reflected in the notice of deficiency. Respondent is entitled to maintain his position until adequate substantiation, including oral testimony, is received and verified. Sokol v. Commissioner, supra at 765. We believe that it was reasonable for the Commissioner to not have conceded the relevant portion of his determination until the meeting between Keegan, Ho, and Farr.

All arguments of the parties have been considered. Those arguments not discussed herein have been rejected as without merit. Accordingly,

Decision will be entered

for respondent.